# IN THE UNITED STATES DISTRICT COURT
# WESTERN DISTRICT OF MISSOURI
# WESTERN DIVISION

| | |
|---|---|
| IN RE: H&R BLOCK<br>IRS FORM 8863 LITIGATION<br><br>Bullock v. HRB Tax Group, Inc., 13-0422,<br>Green v. H&R Block, Inc., 13-1076,<br>Ortega v. HRB Tax Group, Inc., 13-1058,<br>Pooley v. HRB Tax Group, Inc., 13-1060, and<br>Wilkerson v. HRB Tax Group, Inc., 13-1056. | MDL No. 2474<br><br>Master Case No. 4:13-MD-02474-FJG |

## ORDER

Pending before the Court are (1) Defendants' Motion to Compel Certain Named Plaintiffs to Arbitrate and Strike and Dismiss Certain Class Allegations (Doc. No. 30); and (2) Plaintiffs' Motion to Strike Facts and Arguments Raised for the First Time in Defendants' Reply Suggestions (Doc. No. 38). As an initial matter, plaintiffs' motion to strike (Doc. No. 38) will be **DENIED,** as the Court finds that defendants did not raise any new arguments in their reply brief, and instead facts and arguments presented in their reply were properly responsive to issues raised by plaintiffs in their response brief.

### I. Background

This multidistrict litigation includes fourteen putative class actions brought by certain named plaintiffs against Defendant HRB Tax Group, Inc. and certain affiliated companies (collectively, "H&R Block"). The named plaintiffs generally alleged that H&R Block was negligent in handling their 2012 tax returns because it improperly filled out or improperly transmitted IRS Form 8863.

Clients who had their 2012 tax returns prepared by H&R Block entered into contracts with H&R Block that covered the products and services provided to them, and also provided that if a dispute arose between them the dispute would be resolved through

binding individual arbitration. Clients also waived any right to assert or participate in a class action lawsuit. Clients, however, were given the opportunity to opt out of arbitration and the class action waiver within the first 60 days after they entered into the contract. See Doc. No. 31, Ex. A, 2013 Tax Season – W2 Year 2012 Client Service Agreement ("2013 Tax Season CSA"). Specifically, the 2013 Tax Season CSA provides:

> If a dispute arises between you and H&R Block, the dispute shall be resolved through binding individual arbitration unless you opt out of this Arbitration Agreement using the process explained below.
> * * * *
>
> **You and H&R Block also agree that each may bring claims against the other in arbitration only in your or H&R Block's individual capacity and in so doing you and H&R Block hereby waive the right . . . to assert or participate in a class action lawsuit or class action arbitration, [or] . . . to assert or participate in any joint or consolidated lawsuit or joint or consolidated arbitration of any kind.**

Doc. No. 31, Ex. A, 2013 Tax Season CSA (emphasis in original).

Many of the named plaintiffs in the cases before the Court timely opted-out of arbitration. However, Named Plaintiffs Kirsten Bullock, Melissa and Ian Anderson, and Rachelle and Nigel Gayle did not timely opt out of the agreements. Defendants now seek to compel arbitration as to these individual plaintiffs. Defendants also seek an order striking class allegations as to any putative class members who did not opt out of the arbitration agreement.[1]

## II. Legal Standard

Pursuant to the FAA, arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any

---

[1] Defendants indicate that out of 583,848 returns impacted by the Form 8863 issue, they received only 2,195 opt-out requests. Doc. No. 37, Ex. 5.

contract." 9 U.S.C. § 2. The Eighth Circuit follows a two-step process in determining whether to compel arbitration. First, the Court determines whether a valid agreement to arbitrate exists between the parties. Second, the Court determines whether the specific dispute falls within the scope of that agreement. Kenner v. Career Educ. Corp., No. 4:11CV00997 AGF, 2011 WL 5966922, at *3 (E.D. Mo. Nov. 29, 2011) (citing Pro Tech Indus., Inc. v. URS Corp., 377 F.3d 868, 871 (8th Cir. 2004).

**III.    Defendants' Motion to Compel Arbitration as to Five Individual Plaintiffs**

Defendants attached to their suggestions in support of their motion to compel arbitration 2013 Tax Season CSAs signed by Kristen Bullock (Doc. No. 31, Ex. F), Melissa and Ian Anderson (Doc. No. 31, Ex. G), and Rachelle and Nigel Gayle (Doc. No. 31, Ex. H). As discussed above, the 2013 Tax Season CSAs include an arbitration agreement and class action waiver. All five individuals had their taxes prepared in store, not using home software or internet tax preparation, and electronic signatures appear on the agreements. Defendants have provided evidence that none of the five timely opted-out of arbitration.

Plaintiffs bring up several arguments in response, arguing that they should not be compelled to arbitrate their claims. The Court takes up each of these arguments in turn.

A.    Mutual Assent

First, plaintiffs argue that issues of material fact exist as to the presence of mutual assent, as they assert defendants provided no affidavits or other evidence as to how plaintiffs' electronic signatures were obtained. In response, plaintiffs provide their own affidavits indicating that 1) the computer screen was controlled by the H&R Block representative, 2) the display of terms was quick, 3) the documents were displayed on the computer screen after plaintiffs had provided all their personal information and the tax

3

returns were already prepared, and 4) they did not have a meaningful opportunity to review the Customer Service Agreement. See Doc. No. 36 p. 6 and citations therein. Section 4 of the FAA, 9 U.S.C. § 4, allows for a jury trial if there are questions of fact as to the formation of an arbitration agreement, and plaintiffs specifically request a jury trial on this issue in the closing pages of their motion. See also Bettencourt v. Brookdale Senior Living Communities, No. 09-CV-1200-BR, 2010 WL 274331, *4-5 (Jan. 14, 2010). Plaintiffs also argue that discovery is necessary before the Court issues a decision, arguing that discovery is needed on the following issues:

- How was the CSA presented to clients?
- Was there meaningful opportunity for clients to review the documents on the tax preparer's computer screen?
- How were electronic signatures obtained?
- How does H&R Block keep track of whether a client is bound by a prior arbitration agreement? and
- Does H&R Block selectively enforce its arbitration provision?

Defendants reply that discovery and a trial are unnecessary in order for the court to rule on these motions. This Court agrees with defendants. In particular, the Court finds that the information necessary to rule as to the five individual plaintiffs is already before the Court, and discovery would not provide any information that would change the Court's conclusions as to the five individuals. Furthermore, the Court agrees with defendants' assertion in their reply suggestions that plaintiffs have not actually created an issue of material fact as to whether the contracts were formed. Under the laws of the states of Missouri, Oregon, and Massachusetts,[2] "[a] signer's failure to read or understand a

---

[2] State contract law governs the question of whether an agreement to arbitrate exists between the parties. See Perry v. Thomas, 482 U.S. 483, 492-93 n.9 (1987). Here, the contracts were signed in Missouri (Bullock), Oregon (Andersons), and Massachusetts (Gayles).

4

contract is not, without fraud or the signer's lack of capacity to contract, a defense to the contract," Chochorowski v. Home Depot U.S.A., 404 S.W.3d 220, 228 (Mo. Banc 2013); see also Bose Corp. v. Ejaz, 732 F.3d 17, 22 (1st Cir. 2013); Knappenberger v. Cascade Ins. Co., 487 P.2d 80, 83 (Or. 1971). Here, plaintiffs have not alleged incapacity to contract or that signatures were fraudulently obtained, but instead allege that they lacked knowledge about the arbitration agreement or were unable to review documents during the tax preparation process.[3] Defendants note that plaintiffs do not assert the signatures on the CSAs are not theirs; that they asked for additional time to review the CSAs and were refused; or that the tax preparers failed to provide copies of the CSAs or other documents to plaintiffs. Defendants further assert that just because the signatures are electronic does not mean that consent is lacking, as Missouri, Massachusetts, and Oregon have all adopted the Uniform Electronic Transactions Act, which provides "A record or signature shall not be denied legal effect or enforceability solely because it is in electronic form." R.S.Mo. § 432.230(1); Or. Rev. Stat. § 84.019(1); Mass. Gen. Laws ch. 110G, § 7(a). Furthermore, to the extent plaintiffs are arguing that H&R Block did not sign the agreement and therefore did not assent, a signature is not necessary to establish assent, because assent can be shown in other ways, such as through the parties'

---

[3] Defendants note further that certain of plaintiff's allegations cannot be correct because H&R Block's tax preparation software is programmed to require clients who consent to electronic signature to use an e-signature pad and stylus to navigate through an entire document before they can tap a button confirming their agreement to apply their signatures to the document (Doc. No. 37, Ex. 1, ¶¶ 6-9), and the client, not the tax preparer, controls the e-signature pad and navigates through documents (Id.; see also Doc. No. 37, Ex. 2, ¶ 7, Ex. 3 ¶ 7, and Ex. 4 ¶ 7). The Court finds the differences between the plaintiffs' recollections of the signature process and defendants assertions regarding the tax preparation process to be largely immaterial to the resolution of this motion.

conduct. See Heritage Roofing, LLC v. Fischer, 164 S.W.3d 128, 134 (Mo. App. 2005); Western Bank v. Morrill, 420 P.2d 119, 124 (Or. 1966); Schwenk v. Auburn Sportsplex, LLC, 483 F.Supp. 2d 81, 86 (D. Mass. 2007). Here, assent was shown by H&R Block preparing and transmitting plaintiff's tax returns in exchange for plaintiff's agreement to the CSA and payment of fees to H&R Block.

Additionally, defendants supply affidavits from the tax-preparers as to the five individual plaintiffs who did not opt-out, as well as the relevant forms each individual electronically signed. Each individual signed an authorization to electronically sign documents at the outset of document preparation. See, e.g., Doc. No. 37-2, p. 8; Doc. No. 37-3, p. 8; and Doc. No. 37-4, p. 7. Plaintiffs electronically signed the relevant CSAs in this case (Doc. Nos. 37-2, p. 6; 37-3, p. 6; and 37-4 p. 5). Then, at the close of tax preparation, the plaintiffs signed a "Confirmation of Electronically Signed Document," which provides "I agree that I have reviewed the documents below and hereby reaffirm my intention to electronically sign each of these acknowledgements and agreements." Doc. Nos. 37-2, p. 10; 37-3, p. 10, 37-4, p. 9. Among the documents they each confirm their signatures to are the "Authorization to Electronically Sign Documents" and the "Client Service Agreement." Id. It appears that the signatures of each of the plaintiffs are slightly different on the Confirmation of Electronically Signed Document page, indicating to the Court that a separate signature was required on this document. In the Court's view, these documents conclusively demonstrate that plaintiffs signed the relevant CSAs, and any failure to read the documents before signing is not an excuse to contract formation. Therefore, for the reasons stated by defendants, the Court finds that mutual assent is present, and a valid agreement to arbitrate and waiver of class treatment was formed as

to plaintiffs Kirsten Bullock, Melissa and Ian Anderson, and Rachelle and Nigel Gayle.

B.     Late-filed Opt-out Requests of the Anderson and Gayle Plaintiffs

Plaintiffs also argue that the Anderson plaintiffs' and the Gayle plaintiffs' opt-outs should be found valid, even though submitted late. The Anderson plaintiffs submitted their opt-out requests 7 days after the 60 day deadline, and the Gayle plaintiffs submitted their opt out requests 4 days after the 60 day deadline. Plaintiffs argue that because H&R Block has not shown time was of the essence, the deadlines set forth in the contract should not be enforced. Plaintiffs cite for this proposition Smith by Coe v. Piluso, 70 Or. App. 238, 719 P.2d 33, 34-35 (1986), Davis v. Dawson, Inc., 15 F.Supp.2d 64, 119 (D. Mass. 1998); and New England Reinsurance Corp. v. Tennessee Ins. Co., 780 F.Supp. 73, 76-78 (D. Mass. 1991); however, none of these cases stand for the proposition that a deadline specified in a contract is invalid unless "time is of the essence."

Defendants reply that (1) plaintiff's arguments would eliminate an express provision of the arbitration agreement, thus defeating the goal of the FAA that agreements to arbitrate are enforced according to their terms (Stolt-Nielsen S.A. v. AnimalFees Int'l, Corp., 559 U.S. 662, 682 (2010)); (2) 60 days is a sufficient period of time to opt out of arbitration (see Perras v. H&R Block, Inc., No. 12-00450-CV-W-BP (W.D. Mo. Nov. 13, 2013), affirming a 30-day opt out provision from H&R Block's previous year's CSA); (3) plaintiffs' cases do not support the proposition that an opt-out period is enforceable only if time is of the essence; and (4) allowing plaintiffs to opt out only when they learn of a possible claim would defeat an arbitration agreement's purpose of having the parties determine ex ante a forum for any potential disputes.

The Court finds all of defendants' arguments on this point persuasive, and **DENIES** plaintiffs' request to find the late-filed opt-out requests to be valid.

C.  Various Contract Defenses

Plaintiffs argue that even if an agreement to arbitrate exists, the agreement is unenforceable due to various applicable contract defenses. Plaintiffs first argue that the CSAs are unconscionable, as the contracts were non-negotiable, plaintiffs did not have a meaningful opportunity to review the contracts' terms, and the documents were presented on a take-it-or-leave-it basis. Defendants reply, and this Court agrees, that these arguments amount to no more than a contention that the CSAs are contracts of adhesion, and such arguments have been rejected in the arbitration context. See Swain v. Auto Servs., Inc., 128 S.W.3d 103, 107-08 (Mo. App. 2003); AT&T Mobility LLC v. Concepcion, 131 S.Ct. 1740, 1750 (2011). Additionally, Judge Phillips recently found that an earlier version of the CSA was not unconscionable under California law because customers were allowed to opt out unilaterally, and still receive services. Perras v. H&R Block, Inc., No. 12-00450-CV-W-BP (W.D. Mo. Nov. 13, 2013) (finding the arbitration and opt out provision to be unhidden, in plain language, and not to be presented on a take-it-or-leave-it basis when the customer was allowed to opt out within 30 days of contract formation). See also Cicle v. Chase Bank USA, 583 F.3d 549, 54-55 (8th Cir. 2009) (finding that opt-out clause giving plaintiff 30 days to reject changes to the arbitration agreement eliminated concerns regarding unconscionability). The Court finds that the terms of the CSAs signed by Kirsten Bullock, Melissa and Ian Anderson, and Rachelle and Nigel Gayle are not unconscionable.

Plaintiffs also argue that the terms of the CSAs are hopelessly overbroad, in that they provide for arbitration of any possible dispute that could arise between customers and H&R Block and its employees and related entities for any future date with no reasonable limitations. Plaintiffs also complain that "hidden deep in the text of the CSA is

a provision stating that H&R Block will not invoke the right to arbitrate any individual claims a consumer brings in small claims court," and this makes the arbitration provision misleading and illusory.  Doc. No. 36, p. 10-11.  Defendants reply that (1) requiring customers to arbitrate disputes with all H&R Block entities, such as parents, subsidiaries, and affiliates, is a standard and enforceable provision in arbitration agreements, see Hoefs v. CACV of Colorado, LLC, 365 F.Supp.2d 69, 74 (D. Mass. 2005); (2) plaintiffs do not contest that their dispute is directly related to services provided in the CSA, so the hypothetical conjecture that the arbitration agreement could cover a car accident ten years in the future does not justify invalidating the entire agreement (Moses H. Cone Mem. Hosp., 460 U.S. at 22-25 (holding that the FAA requires courts to construe arbitration agreements in favor of enforcement)); (3) with respect to the small claims court provision, defendants state that this language does not render the contract misleading and illusory, but rather gives consumers the choice of bringing small claims in small claims court.  See Fay v. New Cingular, Wireless, PCS, No. 4:10CV883 HEA, 2010 WL 4905698, at *4 (E.D. Mo. Nov. 24, 2010).  The Court agrees with defendants on this point. Plaintiffs have raised hypothetical situations that do not justify invalidating the arbitration agreements, particularly considering that the claims brought by plaintiffs relate specifically to tax preparation services in the year the CSAs were signed.  Plaintiffs' argument about small claims court is faulty as well, as giving individuals the opportunity to bring claims in small claims court is a benefit to H&R Block's clients, not something that makes the arbitration agreement misleading or illusory.  The Court finds that the terms of the arbitration agreement are not overbroad.

Plaintiffs also argue that the right to opt-out is illusory, as the CSA states "If you opt out of this Arbitration Agreement, any prior arbitration agreements shall remain in full

force and effect." Plaintiffs argue this means that anyone who opted out of the 2013 agreement would still be bound by any signed agreement from 2012 or earlier, related to prior years' tax preparation. In other words, plaintiffs argue that the opt-out only would be valid for first-time customers of H&R Block. Plaintiffs state that any attempt to cure the impropriety of this provision fails because the arbitration clause is viewed when it was made. Plaintiffs also argue that defendant's "hidden policy of non-enforcement of the terms of its CSA [by not moving to compel arbitration as to signatories of earlier agreements] renders the arbitration provision illusory and unenforceable." Doc. No. 36, p. 12. Defendants reply that plaintiffs are unreasonably reading the contract to state that plaintiffs are still bound by arbitration provisions in prior CSAs from prior tax seasons. See Nodaway Valley Bank v. E.L. Crawford Constr., Inc., 126 S.W.3d 820, 827 (Mo. App. 2004) ("In construing contractual provisions, this court is to avoid an interpretation that renders other provisions meaningless."). Defendants state their course of conduct in this case shows that plaintiffs "have fabricated an interpretation that neither H&R Block nor its customers contemplated. More than forty Named Plaintiffs in these cases both signed a CSA in a prior year and then opted out of the CSA in 2013. As Plaintiffs are well aware, H&R Block has not moved to compel arbitration for those Named Plaintiffs, nor has H&R Block taken the position that the opt-outs were defective because the clients failed to opt out of arbitration in prior years." (Doc. No. 37, pp. 8-9). Upon consideration of the parties' arguments, the Court agrees with defendants' reasoning and finds that the arbitration agreements are not illusory and unenforceable.

Therefore, for all the foregoing reasons, the Court finds that a valid agreement to arbitrate exists, and that the disputes at issue in this matter fall within the scope of that agreement. No state law contract defenses are an impediment to enforcement of the

arbitration agreements at issue in this matter. Therefore, defendants' motion to compel arbitration as to plaintiffs Kirsten Bullock, Melissa and Ian Anderson, and Rachelle and Nigel Gayle is **GRANTED.**

IV.     **Motion to Strike Class Allegations as to those who Signed Arbitration Agreements**

Defendants argue that an early motion to strike is appropriate, citing to <u>In re Online Travel Co. (OTC) Hotel Booking Antitrust Litig</u>., ___ F.Supp.2d ___, Civil Action No. 3:12-cv-3515-B, 2013 WL 2948086, at *9 (N.D. Tex. June 14, 2013). Hundreds of thousands of the potential class members have signed arbitration agreements and have not opted out. Defendants argue that allowing these claims to proceed could lead to prolonged class certification litigation.

Plaintiffs respond that the motion to strike is improper and should be denied because (1) the Court did not grant leave to file such a motion; (2) the issue is not ripe for adjudication, as plaintiffs have not yet filed a consolidated complaint, making striking class allegations at this point premature and unnecessary; and (3) the Court should only consider the allegations of the complaint itself in determining whether to strike allegations, and here, accepting plaintiffs' allegations as true, plaintiffs would still be entitled to relief.

Upon consideration of the parties' arguments, the Court finds that striking plaintiffs' class allegations is premature, as the plaintiffs have not yet filed a consolidated complaint. The Court may reconsider defendants' arguments after the filing of a consolidated complaint (if such consolidated complaint contains class allegations as to those persons who signed H&R Block's CSAs but failed to opt out). Therefore, defendants' motion to strike (Doc. No. 30) is **DENIED AS PREMATURE.**

## V. Conclusion

For the reasons set forth in this order, defendants' motion (Doc. No. 30) is **GRANTED IN PART** and **DENIED IN PART**.  The Court (1) **GRANTS** defendants' motion to compel arbitration as to Kirsten Bullock, Melissa and Ian Anderson, and Rachelle and Nigel Gayle; and (2) **DENIES** defendants' motion to strike.  The claims of plaintiffs Kirsten Bullock, Melissa and Ian Anderson, and Rachelle and Nigel Gayle must be arbitrated pursuant to the terms of the CSA.  Plaintiffs Kirsten Bullock, Melissa and Ian Anderson, and Rachelle and Nigel Gayle and defendants are further **ORDERED** to submit, in 90-day intervals after the date of entry of this Order, joint status reports advising the Court on the progress of arbitration.

**IT IS SO ORDERED**.

Date   July 11, 2014  
Kansas City, Missouri

**S/ FERNANDO J. GAITAN, JR.**  
Fernando J. Gaitan, Jr.  
United States District Judge